**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
EASTERN DIVISION**

| | | |
|---|---|---|
| BENNIE MCPHERSON and MILTON MCPHERSON, ) ) ) | | |
| Plaintiff, ) ) | | |
| v. ) ) | Civil Action No. 3:11cv638-WHA | |
| ALLSTATE INDEMNITY COMPANY, ) ) ) | (wo) | |
| Defendant. ) | | |

## MEMORANDUM OPINION AND ORDER

### I. INTRODUCTION

This case is before the court on the Plaintiffs' Motion for Partial Summary Judgment (Doc. #19), Allstate Indemnity Company's Motion for Final Summary Judgment as to All Claims (Doc. #22), Allstate Indemnity Company's Motion for Oral Argument (Doc. #33), and the Plaintiffs' Motion to Strike (Doc. #45).

The Plaintiffs, Bennie and Milton McPherson, filed a Complaint in the Circuit Court of Macon County, Alabama. They bring claims against Allstate Indemnity Company ("Allstate") for breach of contract (Count I) and bad faith (Count II). The Plaintiffs seek mental anguish damages as part of their claim for breach of contract.

The case was removed to this court on the basis of diversity jurisdiction, the parties being completely diverse and the requisite amount being in controversy.

The parties have extensively briefed their motions, and the court finds that oral argument is unnecessary. The court has considered all of the briefs and evidentiary submissions in ruling on the pending motions.

## II.  SUMMARY JUDGMENT STANDARD

Summary judgment is proper "if there is no genuine issue as to any material fact and . . . the moving party is entitled to a judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

The party asking for summary judgment "always bears the initial responsibility of informing the district court of the basis for its motion," relying on submissions "which it believes demonstrate the absence of a genuine issue of material fact." *Id.* at 323.  Once the moving party has met its burden, the nonmoving party must "go beyond the pleadings" and show that there is a genuine issue for trial. *Id.* at 324.

Both the party "asserting that a fact cannot be," and a party asserting that a fact is genuinely disputed, must support their assertions by "citing to particular parts of materials in the record," or by "showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact."  Fed. R. Civ. P. 56 (c)(1)(A),(B).  Acceptable materials under Rule 56(c)(1)(A) include "depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials."

To avoid summary judgment, the nonmoving party "must do more than show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).  On the other hand, the evidence of the nonmovant must be believed and all justifiable inferences must be drawn in its favor. *See Anderson v. Liberty Lobby*, 477 U.S. 242, 255 (1986).

After the nonmoving party has responded to the motion for summary judgment, the court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(a).

### III. FACTS

The submissions of the parties establish the following facts, construed in a light most favorable to the non-movants:

Plaintiffs Bennie and Milton McPherson ("'the McPhersons") own real property in Ramer, Alabama, which they insured with Defendant Allstate.   In March of 2010, a fire destroyed the dwelling and personal property within it.   The dwelling had been unoccupied for more than 90 days at the time of the fire.   The insurance policy, including an endorsement entitled "Landlords Package Policy--Vandalism Coverage," was in effect at the time of the fire.

Policy provisions relied upon by the parties in this case in support of and in opposition to the Motions for Summary Judgment include the following:

Definitions Used in This Policy

12.  **Vandalism**–means willful or malicious conduct resulting in damage or destruction of property. **Vandalism** does not include theft of property.

\* \* \* \*

Losses We Do Not Cover Under Coverages A and B:

18.  **Vandalism**.  However, **we** do cover sudden and accidental direct physical loss caused by fire resulting from **vandalism** unless **your dwelling** has been vacant or unoccupied for more than 90 consecutive days immediately prior to the **vandalism**.

\* \* \* \*

**Section I Additional Protection**

3

6. **Arson Reward**
We will pay up to $5,000 for information leading to an arson conviction in connection with a fire loss to property covered under Section I of this policy. The $5,000 limit applies regardless of the number of persons providing information.

(Doc. #19-1, pages 3, 9, and 15).

The Landlords Package Policy Endorsement provides as follows:

A. Under **Coverage A–Dwelling Protection** and **Coverage B–Other Structures Protection**, **Losses We Do Not Cover Under Coverages A and B**, item A. 18 is replaced by the following:

18. **Vandalism**, or loss caused by fire resulting from **vandalism**, if **your dwelling** is vacant or unoccupied for more than 90 consecutive days immediately prior to the **vandalism**.

(Doc. #21, Ex. C)

After the fire loss, the McPhersons submitted a claim to Allstate under the policy. Rod Williams ("Williams"), a fire investigator with EFI Global, conducted an investigation and issued a report concluding that the cause of the fire was incendiary. Williams concluded as follows:

> Fire pattern analysis indicates that the fire originated in the southeast bedroom of the structure. The lack of ignition sources within the area of origin preclude accidental ignition. The evidence indicates that ignition resulted from an open flame. The evidence also indicated that the first fuel ignited consisted of ignitable vapors. Ignitable liquid burn patterns were noted on the floor of the southeast bedroom. Circumstances bringing ignition and fuel together include human involvement. Evidence eliminates all causes other than the application of an open flame.
>
> The cause of this fire is incendiary.

(Doc. #22, Ex. B).

Allstate ordered a lightning report for the area for a 36 hour time frame around the time of loss which showed only that a lightning strike was 1.1 miles away from the subject property

within that time frame. (Doc. #41-1 at p.2).

The McPhersons's claim under the policy was denied by Allstate. The letter sent by Allstate denying the claim states as follows:

> We have found that there is no coverage available for the loss that occurred on March 11, 2010. As a result, we will not be able to make any payments for the following reasons:
> 18. Vandalism. However, we do cover sudden and accidental direct physical loss by fire resulting from vandalism unless your dwelling has been vacant or unoccupied for more than 90 consecutive days immediately prior to the vandalism.

(Doc. #29-2.)[1]

In response to Allstate's Motion for Summary Judgment, the McPhersons have submitted an affidavit from their nephew, Willie McPherson. Willie McPherson was the caretaker of the property in question. He did not live at the property, but lives within the same county, in Montgomery, Alabama. In his affidavit, Willie McPherson states that he worked on the subject property and recalled "several occasions where gas was inadvertently spilled on the interior floors at the property." (Doc. #41-5 at p.1). He stated that gasoline was used to clean stains and blemishes off the vinyl flooring throughout the property. *Id.* He also states that when he was notified of the fire, he drove to the property in Ramer, Alabama, and observed flashes of lightning while he was driving and when he arrived at the property. *Id.*

### IV. DISCUSSION

The McPhersons move for summary judgment on the coverage issue, stating that their

---

[1] While the letter denying coverage did not quote the policy endorsement, there is no contention by the McPhersons that the endorsement does not apply to the coverage dispute in this case. Instead, the McPhersons accept that the endorsement contains the quoted language, stating in their brief that the issue before the court is "whether an intentionally set fire (arson) is excluded from coverage as a 'loss caused by fire resulting from vandalism.'" (Doc. #29 at p. 3).

loss is covered by the policy because Allstate determined that the fire was caused by arson, which is not excluded under the policy.  The McPhersons have also argued that whether arson is excluded from coverage as vandalism is ambiguous, and the policy ambiguity should be resolved against Allstate and in favor of coverage.

Allstate also seeks summary judgment on the coverage issue, as well as on the bad faith claim, and the requested mental anguish damages.

The court turns first to the motions as to the breach of contract claim.

### 1. Breach of Contract

#### a. Policy Exclusion

As set out above, the policy, including its Landlords Policy Package Endorsement, excludes coverage for "vandalism, or loss caused by fire resulting from vandalism,"  if the dwelling is vacant or unoccupied for more than 90 consecutive days.  (Doc. #21, Ex. C, p.1) "Vandalism," is defined in the policy as "willful or malicious conduct resulting in damage or destruction of property."  (Doc. #19-1, p.3).  The plain language of the policy, therefore, is that coverage is excluded for  "[willful or malicious conduct resulting in damage or destruction of property] or loss caused by fire resulting from [willful or malicious conduct resulting in damage or destruction of property], if [the] dwelling is vacant or unoccupied for more than 90 consecutive days prior to the [willful or malicious conduct resulting in damage or destruction of property]."  *(Id.*; Doc. #21, Ex. C, p.1.).

The McPhersons argue that "vandalism" and "arson" are separate perils under the policy, so that the vacancy exclusion which applies to "vandalism" does not also apply when there is an intentionally set fire.  The McPhersons cite to policy provision to support their argument that

arson and vandalism are separate perils.  Initially, the McPhersons pointed to places in the policy where "fire," is referred to, and argued that the vacancy exclusion does not refer to fire, so it is a separate peril.  Allstate has pointed out, however, that the Landlords Package Policy endorsement which contains the applicable vacancy exclusion specifically refers to "fire."   After Allstate cited the appropriate endorsement in its brief, the McPhersons refined their argument, stating that "loss caused by fire resulting from vandalism" might be a fire which resulted unintentionally as a result of vandalism, so that "vandalism" does not mean a fire intentionally set.[2]

The McPhersons also state that arson is not excluded from coverage because, if it were, there would be no reason to have coverage for an arson reward.  The "arson reward" provision of the policy, set out fully above, states that Allstate will pay $5,000 for information relating to an arson conviction in connection "with a fire loss to property covered under **Section I** of this policy."  Therefore, the McPhersons argue, arson and vandalism are separate perils, and the vacancy exclusion does not apply to arson.  The McPhersons further state that if the policy is ambiguous on this point, that ambiguity is to be construed in their favor.

Under Alabama law, if an insurance policy is clear and unambiguous in its terms, then there is no question of interpretation or construction.  *Twin City Fire Ins. Co. v. Alfa Mut. Ins. Co.*, 817 So. 2d 687, 692 (Ala. 2001).  "While ambiguities or uncertainties in an insurance policy should be resolved against the insurer, ambiguities are not to be inserted by strained or twisted

---

[2] The McPhersons set forth the following hypothetical: if a person breaks into a house for the purpose of spraying graffiti and accidentally knocks over a lit candle (presumably in a house vacant for more than 90 days) coverage of fire loss is excluded, but if that same person broke into the house with the sole intent to intentionally set the house on fire, the exclusion would not apply because it would be arson, not vandalism.

reasoning." *Id.* (*citing Kelley v. Royal Globe Ins. Co.*, 349 So.2d 561 (Ala.1977)). In deciding whether an insurance policy is ambiguous, a court should construe language according to the meaning that a person of ordinary intelligence would reasonably give it. *Id.*

The Eleventh Circuit, applying Georgia law, has examined an insurance policy with a "vandalism or malicious mischief" vacancy exclusion, and has explained that "a common sense interpretation of the insurance contract's 'Vandalism or Malicious Mischief' provision which contains the 'vacancy' exclusion, suggests that it would apply to a fire set in a vacant house by an unknown arsonist or vandal." *American Mutual Life Ins. Co. v. Durrence*, 872 F.2d 378, 379 (11th Cir. 1989). This court sees no reason to depart from the Eleventh Circuit's plain meaning reading of similar language in this case.

Furthermore, the policy endorsement at issue in this case even more unambiguously applies to fire loss than did the provision at issue in *Durrence*. Allstate has made it clear that loss by fire is covered by the vacancy exclusion by specifically referring to "loss caused by fire resulting from vandalism."

Even if loss caused by a fire could be unintentional as a result of other acts of vandalism, as argued by the McPhersons, loss by fire which was the result of the willful conduct of setting a fire is also loss caused by fire resulting from vandalism. The definition of "vandalism" includes willful conduct, and the vacancy exclusion clearly applies to loss from fire which results from such willful conduct.[3] To accept the McPhersons's argument that arson does not fit within the

---

[3] The court notes that Alabama courts have stated that the "corpus delicti in arson consists of a building burned; and second, that it was wilfully fired by some responsible person." *Lowery v. State*, 88 So. 2d 854, 855 (Ala. App. 1956). This reinforces that the common sense reading of the policy that fires as a result of "willful or malicious" conduct includes intentionally set fires.

8

vacancy exclusion, therefore, would be to ignore the plain, common sense language of the policy and its endorsement.

In addition, the fact that the policy includes an arson reward does not make the vacancy exclusion ambiguous. The arson reward provision is not, contrary to the McPhersons's argument, rendered superfluous by reading the vacancy exclusion to include arson. The arson reward is a policy provision identifying a reward "for information leading to an arson conviction in connection with a fire loss to property covered under Section I of this policy." (Doc. #19-1 at p.15). The vacancy exclusion is an exclusion from what would otherwise be covered, if the loss from arson occurred in property left vacant for more than 90 days. In other words, arson losses can be covered by the policy, for which Allstate offers a reward for information leading to an arson conviction, but arson losses are not covered, and therefore no reward for information would be offered, if the arson occurred in property which had been vacant for more than 90 days.

The cases relied upon by the McPhersons to support their reading of the policy were not interpreting the policy language presented in this case. *See, e.g., Johnson v. State Farm Fire & Casualty Co.,* No. 278267, 2008 WL 4724322 (Mich. App. Oct. 28, 2008). In *Johnson*, the policy excluded loss caused to vacant buildings by "vandalism and malicious mischief," which was a phrase not defined in the policy. *Id.* at *2.[4] In cases in which the courts examined language which is presented in the instant case, however, they found that arson is included within the vacancy exclusion. *See*, *e.g., Saffold v. Allstate Indemnity Co.*, No. 2:08cv1023-MHT, 2009 WL 3326934 (M.D. Ala. Oct. 14, 2009) (exclusion of loss from fires due to

---

[4] In its analysis, the court noted, but ultimately did not follow, the Eleventh Circuit's decision in *Durrence*. *Johnson v. State Farm Fire & Casualty Co.,* No. 278267, 2008 WL 4724322, at *2. (Mich. App. Oct. 28, 2008).

9

vandalism applied to loss from an intentionally set fire); *Babandi v. Allstate Indemnity Ins. Co.*, No. 1:07cv329, 2008 WL 906116, at *3 (N.D. Ohio March 31, 2008) (stating that the "fire, intentionally set with the use of accelerant, was caused by vandalism, i.e., 'willful or malicious conduct.'").

The court concludes that the McPhersons's motion for summary judgment is due to be DENIED, because property loss due to arson in a house left vacant for more than 90 days is unambiguously excluded from coverage as "[willful or malicious conduct resulting in damage or destruction of property] or loss caused by fire resulting from [willful or malicious conduct resulting in damage or destruction of property], if [the] dwelling is vacant or unoccupied for more than 90 consecutive days prior to the [willful or malicious conduct resulting in damage or destruction of property]." (Doc. #21, Ex. C, p.1; Doc. #19-1, p.3).

### b.  Cause of Fire

In addition to the coverage issue, a different issue is presented as to Allstate's Motion for Summary Judgment on the breach of contract claim because Allstate has argued, and presented evidence to show, that the fire was incendiary as a result of human involvement, and therefore, the loss was excluded.

The McPhersons have moved to strike some of the deposition testimony Williams of EFI Global, Allstate's expert. Therefore, before the court turns to the evidence pointed to by Allstate, the court must address what evidence may be considered. The McPhersons seek to exclude Williams's deposition testimony regarding a conversation with an Officer Talley about the condition of the windows in the home, which the McPhersons state occurred well after the denial of their claim. They point out that in a deposition Allstate's corporate representative,

Michael Rocchio, stated that the report by Williams noted that the windows were intact and that the doors to the home were locked. The McPhersons contend that Williams did not learn that glass in the windows was broken until he spoke to an Officer Talley after the denial of the claim.

In response, Allstate acknowledges that a statement by Officer Talley that a bathroom window was broken out and a screen had been pulled off the window was not known to Williams or Allstate at the time of the denial of coverage, and so cannot be used with regard to the "bad faith" claim, but, Allstate asserts, it is relevant to the breach of contract claim. Allstate further asserts that information about the condition of the window was provided to Allstate before the denial, and so is properly considered.

The court has reviewed the evidence pointed to by the parties as to the condition of the windows. The Fire Investigation Report, dated April 5, 2010, completed by Williams, itself references the condition of the windows. Williams notes in the report that "[s]ecurity of the building at the time of loss is at issue." (Doc. #41-4). Although he states that the windows were "secured at the time of the loss," he also states that the "window glass was broken in most all of the windows on all sides of the structure." *Id.* In his deposition, Williams states that "secured" meant that the lock was secured. *Id.* at p.72-73. Given that Williams's report itself references the broken windows, the court will only consider the report for evidence of the condition of the windows and will not consider testimony based on statements by Officer Talley as to the condition of the windows, so the Motion to Strike is due to be denied as moot.

The court turns now to the issue of Allstate's grounds for summary judgment as to the issue of the cause of the fire. Allstate points out that in the report by Williams of EFI Global, referred to above, Williams concluded that the fire was incendiary, that it began in the southeast

11

bedroom, and that the circumstances of bringing ignition and fuel together include human involvement. (Ex. B. to Doc. #22).

The McPhersons state that Williams's opinion that the fire was intentionally set is not dispositive, and that a jury is entitled to determine the weight and credibility of the testimony. They have not, however, pointed to any evidence to contradict that conclusion in opposing summary judgment on the breach of contract claim, and summary judgment is due to be GRANTED on that basis. The court notes, however, that in support of their bad faith failure to investigate claim, the McPhersons argue that Williams did not look for signs of a lightning strike but instead relied on a lightning report to dismiss lightning as a cause,[5] that the lightning strike report showed that lightning struck a mile away from the property on the day in question, that Williams's report indicated that the property was secured so there is no explanation of how a vandal could have entered the home, that copper wiring which could have been a conduit for lightning had been removed at the time of the investigation, and that Willie McPherson's affidavit establishes that there was gasoline on the premises, as well as lightning in the vicinity on the day of the loss. Although the McPhersons have advanced these arguments in support of a different claim, the court will consider them in evaluating Allstate's motion for summary judgment as to the breach of contract claim.

Allstate agrees with the McPhersons that an expert's testimony as to the cause of fire is

---

[5] The McPhersons state that Williams testified that he was not looking for signs that a lightning strike caused the fire. The question asked in the deposition was "Were you looking for signs that lightning may have struck the residence?" Williams answered that he would have noticed if there had been lightning, and that lightning is a natural cause of fires that he would typically rule out as an ignition source. Williams Dep. at p. 54::9-56:17. Therefore, the inference the McPhersons refer to that Williams was not looking for lightning is not supported by the testimony of Williams.

not dispositive, but states that the McPhersons have provided no qualified expert testimony to rebut Williams's findings.  Allstate points out that Williams investigated the fire and offered his opinion as to the cause and origin of the fire.  Williams found that the fire was incendiary.  In his deposition, Williams has also offered the opinion that the fire was not caused by lightning. Williams stated in his deposition that he did not see any indication of lightning on the structure at the time of his investigation, and would have noticed if lightning had struck the residence. Williams Dep. at p. 54: 6-13.  He elaborated that the electrical system did not have evidence of arcing, and the meter box, transformer, entrance service cable, and ground rod did not appear to have any kind of electrical activity. *Id.* at p. 54:23-55:6.  He explained that lightning is a natural cause of fires and one of the things he would typically rule out as an ignition source. *Id.* at p. 55: 16-19.  Williams acknowledged that wiring had been removed by vandals after the fire, but stated that when he looked at the remaining wiring, he did  not see any evidence of arcing. *Id.* at p. 58: 1-8.  Furthermore, when asked in his deposition whether, if there were no gasoline at the site, he would have thought that the fire was caused by a lightning strike, Williams answered "no, sir." *Id.* at p. 100: 19-20.

      The McPhersons have offered no expert testimony, or eye witness testimony from the time of the loss, to contradict those conclusions.  The evidence that they have pointed to comes primarily from Willie McPherson's affidavit, and Williams's own report.  As noted above, Willie McPherson states in his affidavit that for "several months prior to the fire," he had made improvements to the property and recalled "several occasions where gas was inadvertently spilled on the interior floors at the property."  Willie McPherson also stated that after he was notified of the fire on March 10, 2010, while he was driving to the house and after arriving at the

property, he observed lightning flashes.  (Doc. #41-5).

Allstate argues that Willie McPherson's affidavit offered years after the fire does not establish how gasoline made its way to the room of origin or how it was ignited.   Construing his statement in a light most favorable to the nonmovants, Willie McPherson's statement about the general presence of gasoline on floors at the structure establishes that he put gasoline on the floors, but does not rule out that others may have also placed gasoline on the floor in the room of origin of the house.  Willie McPherson's affidavit statement as to his seeing lightning at the property after he had been notified that there was a fire at the property, could not establish that the house was struck by lightning.

As to evidence other than Willie McPherson's affidavit pointed to by the McPhersons, although there is evidence from a lightning report that there was lightning a mile away from the loss location, there is no evidence before the court that lightning struck the house or otherwise caused the fire.  As to the McPhersons's contention that Williams's report itself undermines a finding of vandalism because the home was "secure" according to Williams, Williams's report states that "[s]ecurity of the building at the time of loss is at issue."  (Doc. #41-4).  As Allstate points out, although Williams states that the windows were "secured at the time of the loss," he also states that the "window glass was broken in most all of the windows on all sides of the structure."  *Id.*

In an unpublished opinion, the Eleventh Circuit reviewed a district court's grant of summary judgment where fact witnesses offered evidence to dispute an expert opinion as to a cause of loss.  *See Nix v. State Farm Fire & Casualty Co.*, 444 F. App'x. 388 (11th Cir. 2011).  In *Nix*, coverage was denied for a wall collapse.   In support of its summary judgment motion in

the case, the insurance company offered expert testimony that the wall collapsed because it was not properly designed or built.  The plaintiffs argued that a burst water pipe caused the collapse.  The Eleventh Circuit explained that the witnesses--one of the plaintiffs and a contractor--did not witness the wall collapse, had no personal knowledge of the construction, and so offered only inadmissible lay opinion testimony as to the cause. *Id.* at 390.   Therefore, the "uncontroverted evidence" from the expert established that the claim was excluded from coverage.  *Id.*

In this case, the McPhersons's apparent theory that lightning, either by itself or in combination with gasoline left at the scene by Willie McPherson, caused the fire at issue is supported only by evidence discussed above.  When construed in a light most favorable to the nonmovants, that evidence is not sufficient to create a question of fact as to the cause of the fire, in the face of Williams's report and deposition testimony.   To avoid summary judgment, the nonmoving party "must do more than show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).  Summary judgment is due to be GRANTED as to Allstate on the breach of contract claim.

2.  Bad Faith

The McPhersons rely on *State Farm & Casualty Co. v. Slade*, 747 So. 2d 293 (Ala. 1999), to establish a claim for abnormal bad faith in this case.  The McPhersons also cite *Blackburn v. Fidelity & Deposit Co. Of Maryland*, 667 So. 2d 661 (Ala. 1995), for the proposition that in abnormal bad faith cases, the plaintiff does not have to establish a predicate of preverdict judgment as a matter of law on a breach of contract claim.

In *Slade,* the Alabama Supreme Court makes clear that although it "has recognized

several abnormal cases of bad faith, that recognition did not eliminate the requirement that the plaintiff prove an entitlement to benefits under the policy." *Slade,* 747 So. 2d at 318. To establish a claim of abnormal bad faith failure to investigate, the insured must show (1) that the insurer failed to properly investigate the claim or to subject the results of the investigation to cognitive evaluation and review, and (2) that the insurer breached the contract for insurance coverage when it refused to to pay the claim. *Id.* at 318; *Ex parte Simmons*, 791 So.2d 371, 379 (Ala. 2000). Having concluded that Allstate has established that there are no material issues of fact, and that the policy excluded the loss at issue in this case, the court concludes that summary judgment is also due to be GRANTED as to the bad faith claim.

### 3.  Mental Anguish

Allstate contends that the McPhersons cannot recover on a claim for mental anguish damages because mental anguish is not a recoverable element of damage for breach of contract unless the dwelling is a home. Because mental anguish damages are just an element of damage for the breach of contract claim, having concluded that summary judgment is due to be granted as to the substantive claim, summary judgment is also due to be granted as to the request for mental anguish damages.

### V. CONCLUSION

For the reasons discussed,  it is hereby ORDERED as follows:

1.  The Plaintiffs' Motion for Partial Summary Judgment (Doc. #19) is DENIED.

2.  Allstate Indemnity Company's Motion for Oral Argument (Doc. #33) is DENIED.

3.  The Plaintiffs' Motion to Strike (Doc. #45) is DENIED as moot.

     4.  Allstate Indemnity Company's Motion for Final Summary Judgment as to All Claims (Doc. #22) is GRANTED.

     A separate final judgment will be entered in accordance with this Memorandum Opinion and Order.

Done this 26th day of April, 2012.

                              /s/ W. Harold Albritton
                              W.  HAROLD ALBRITTON
                              SENIOR UNITED STATES DISTRICT JUDGE